IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL R. CRANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 03 C 8861 |
| SERGEANT RICK JUSTER; OFFICER D. | ) |
| DENAULT; OFFICER M. BOYLE, OFFICER | ) |
| BRYMER; OFFICER A. COX; OFFICER K. | ) |
| DELANEY; OFFICER C. HOLT; OFFICER | ) |
| JOHN DOE; CITY OF WILMINGTON POLICE | ) |
| DEPARTMENT; and CITY OF WILMINGTON, | ) |
| a Municipal Corporation, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Michael Crane ("Crane") has brought the present three-count First Amended Complaint alleging false imprisonment in violation of the Fourth Amendment, malicious prosecution under Illinois law, and a respondeat superior claim against Defendants Wilmington Police Department, the City of Wilmington, and the individual police officers. Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' motion.

**BACKGROUND**

**I.  Northern District of Illinois Local Rules**

The Court derives the facts in the background section from the parties' Northern District of Illinois Local Rule 56.1 Statements of Fact. Facts in the parties' statements that are not controverted are deemed admitted if supported by the record. *See Smith v. Lamz,* 321 F.3d

660, 683 (7th Cir. 2003). Responses that do not cite to specific references to the affidavits, depositions, and other supporting materials are subject to the Court's discretion as to their admission. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). With these standards in mind, the Court turns to the facts of this case.

## II. Facts

On December 13, 2001, James Riggs and his sister Valerie Riggs went to a laundromat in Wilmington, Illinois. (R. 29-1, Defs' Local Rule 56.1 Statement, ¶ 1.) Valerie drove them to the laundromat and on the way, they picked up James' girlfriend. (*Id.* ¶ 2.) That same day, Crane and his two friends, Jacob Peters and Sean Doyle, were riding their bicycles. (*Id.* ¶ 3.) While riding their bicycles, Crane and his friends stopped to talk to another friend, Sylyna Ficarella, who had pulled her car over at the laundromat. (*Id.*; R. 44-1, Pl.'s Local Rule 56.1 Statement of Add'l Facts, ¶ 1.) Crane, Peters, Doyle, and Ficarella were standing outside of the laundromat when Stephen Krand and Jeremy Hicks arrived. (Defs' Stmt. ¶ 3, Pl.'s Stmt. ¶ 1.) Shortly thereafter, Krand went into the laundromat to use the bathroom. (Defs' Stmt. ¶ 4, Pl.'s Stmt. ¶ 3.)

After a few minutes, Hicks followed Krand into the laundromat and then quickly returned. (Defs' Stmt. ¶ 5.) Hicks stated that he had gone inside and kicked the bathroom door while Krand was using the bathroom. (*Id.*, Pl.'s Stmt. ¶ 3.) A few minutes later, Krand came out of the laundromat and was very upset. (Defs' Stmt. ¶ 6, Pl.'s Stmt. ¶ 4.) Krand asked who had kicked the door open. (Defs' Stmt. ¶ 6.) Hicks told him that someone from the back part of the laundromat had done so. (*Id.*, Pl.'s Stmt. ¶ 4.) Krand then went back inside the laundromat.

2

(Defs' Stmt. ¶ 6, Pl.'s Stmt ¶ 4.)

Meanwhile, James Riggs noticed that people had come into the laundromat while he was doing laundry and he went outside to the back of the laundromat because he did not want any trouble. (Defs' Stmt. ¶ 8.) Valerie Riggs, however, did not initially go outside when the person came into the laundromat to use the bathroom. (*Id.* ¶ 9.) When Valerie first saw this person enter the laundromat, she thought it was Crane. (*Id.*) Eventually, Valerie went outside to join James and his girlfriend. (*Id.* ¶ 10.)

A short time later, Valerie returned to the laundromat where she was confronted by a person who asked her who had opened the bathroom door and she told him that she did not know what he was talking about. (*Id.* ¶ 11.) After confronting her, this person went outside to confront James Riggs. (*Id.*; Pl.'s Stmt. ¶ 5.) While back in the laundromat, the person started yelling at James and accused James of having opened the bathroom door. (Defs' Stmt. ¶ 12, Pl.'s Stmt. ¶ 5.) The two of them then argued. (Defs' Stmt. ¶ 12.) During the argument, the person punched James in the nose. (*Id.* ¶ 13.) At that time, Valerie thought that it was Crane who had punched James in the nose. (*Id.* ¶ 14.) After her brother was punched, Valerie jumped on the person. (*Id.* ¶ 15, Pl.'s Stmt. ¶ 5.)

After the incident, James Riggs went back into the laundromat to get tissues for his bloody nose. (Defs' Stmt. ¶ 19.) Valerie Riggs meanwhile called the police to report what had happened. (*Id.*) City of Wilmington Police Officers Delaney and Denault then met with James and Valerie Riggs at the laundromat. (*Id.* ¶ 21, Def.'s Ex. 4, Denault Dep. at 15; Pl.'s Stmt. ¶ 9.) Valerie explained to the officers what had happened, describing the assailant as clean shaven, approximately six feet tall with dark hair, 18-25 years old, wearing a hat, black jacket, and blue

3

jeans. (Defs' Stmt. ¶ 22; Pl.'s Stmt. ¶ 10.) The only description James gave was that the person smelled of alcohol. (Defs' Stmt. ¶ 23, Pl.'s Stmt. ¶ 10.) The officers then canvassed the area. (Defs' Stmt. ¶ 25, Pl.'s Stmt. ¶ 14.)

Meanwhile, Donald Riggs met his children, Valerie and James, at the fire department where they had gone to get James medical treatment. (Defs' Stmt. ¶ 26.) When Donald Riggs arrived, the paramedics were treating James, so Valerie told her father what had happened at the laundromat. (*Id.*) Donald Riggs then left the fire department and started driving around to see if he could find out if anyone saw anything. (*Id.* ¶ 27, Def.'s Ex. 6, at 14-15.) Donald Riggs met up with Officer Delaney, who explained to him that they were canvassing the area. (*Id.*)

As Officer Denault was canvassing the area, he saw three juveniles on bicycles riding toward him. (*Id.* ¶ 28, Pl.'s Stmt. ¶ 14.) One of the juveniles pulled a hood over his head and continued riding toward the officer while the other two went in the opposite direction. (Defs' Stmt. ¶ 28.) Officer Denault did not recognize the juveniles who went in the opposite direction. (*Id.*, Pl.'s Stmt. ¶ 14.) Officer Denault then activated his emergency lights and directed the juvenile on the bicycle to approach him. (Defs' Stmt. ¶ 29.) The juvenile was Sean Doyle. (*Id.,* Pl.'s Stmt. ¶ 14.) Officer Denault asked Doyle if he had been at the laundromat and Doyle responded that he had. (Defs' Stmt. ¶ 30.) Doyle also told him that Crane and Peters had been at the laundromat. (*Id.*, Pl.'s Stmt. ¶ 15.) Doyle did not give Officer Denault any additional information at that time. (Defs' Stmt. ¶ 30, Pl.'s Stmt. ¶ 15.)

After Officer Denault spoke to Doyle, the officer arranged for Valerie and James Riggs to drive to the location to determine if they could identify Doyle as the assailant. (Defs' Stmt. ¶ 31.) Valerie indicated that although Doyle was present at the laundromat, he was not the person

4

who had punched James. (*Id.* ¶ 32, Pl.'s Stmt. ¶ 16.) After Valerie indicated that Doyle was not the assailant, the officer let Doyle leave. (Defs' Stmt. ¶ 35, Pl.'s Stmt. ¶ 16.)

After talking to Doyle, Officer Delaney left the area and began canvassing the neighborhood to no avail. (Defs' Stmt. ¶ 36, Pl.'s Stmt. ¶ 17.) Afterwards, Officer Denault contacted James and Valerie Riggs to inform them that the officers would create an incident report and that an investigator would look into the matter. (Defs' Stmt. ¶ 37, Pl.'s Stmt. ¶ 17.) Other than preparing the report to be forwarded to the investigator, Officers Denault and Delaney did not conduct any further investigation. (Defs' Stmt. ¶ 38, Pl.'s Stmt. ¶ 24.)

A few days after the incident, Valerie, James, and Donald Riggs went to the Wilmington Police Department to follow-up on the incident. (Defs' Stmt. ¶ 39.) When they arrived at the police station, Officer Rick Juster, a police detective, met them. (*Id.* ¶ 40.) The parties dispute whether Valerie, James, or Donald Riggs immediately told Officer Juster that they thought Crane was the assailant. (*Id.* ¶ 41.) In any event, both parties agree that Officer Juster relied on Officer Denault's and Delaney's police reports for the facts regarding the incident when he met with the Riggs. (*Id.* ¶ 40, Pl.'s Stmt. ¶ 29.) Officer Denault's incident report indicated that Crane was a possible suspect in the matter and a typewritten report by Officers Denault and Delaney indicated that Crane was at the laundromat the evening of the incident. (*See* Pl.'s Stmt., Ex. I.)

Officer Juster then created two photographic identification line-ups for Valerie and James to review independently. (*Id.* ¶¶ 42, 44, Pl.'s Stmt. ¶ 30.) Officer Juster chose the people for the photographic line-ups from the police department's database of arrests. (Defs' Stmt. ¶ 42.) At his deposition, Officer Juster testified that he chose photographs of people who were similar in age, height, and stature. (*Id.*) Valerie picked Crane out of the photographic line-up and then

5

wrote her statement naming Crane as the assailant. (*Id.* ¶¶ 46, 49.) James Riggs independently picked Crane out of the photographic line-up and filled out a handwritten statement as well. (Defs' Stmt. ¶¶ 45, 47.) There is no indication in the record that Officer Juster affirmatively encouraged or prompted Valerie or James Riggs to choose Crane from the photographic arrays. (Defs' Stmt. ¶¶ 45, 46.)

Thereafter, the police took the case to the Will County State's Attorney Office and the State's Attorney made the decision to charge Crane with a felony. (*Id.* ¶ 50.) A warrant was issued for Crane's arrest after which Officer Andrew Cox arrested Crane pursuant to the warrant. (*Id.* ¶ 51, Pl.'s Stmt. ¶ 38.) When Officer Cox arrested Crane, Crane denied that he had hit James Riggs and stated that Steve Krand had done so. (Defs' Stmt. ¶ 53, Pl.'s Stmt. ¶ 38.) After the police processed Crane at the Wilmington Police Department, they transported him to the Will County Detention Facility. (Defs' Stmt. ¶ 54.)

On the day Crane was arrested, Crane's friend, Jacob Peters, went to the police station to discuss Crane's arrest with Officer Michael Boyle. (*Id.* ¶ 55.) Peters told Officer Boyle that Crane had not committed the crime. (*Id.*) Officer Boyle explained that he was not investigating the matter and directed Peters to speak to Officer Juster. (*Id.*) Officer Boyle did not tell Officer Juster about his conversation with Peters. (*Id.*)

A few weeks after Crane's arrest, Officer Juster testified before a grand jury about the laundromat incident, stating that based on James and Valerie Riggs' identifications and written statements, Crane had punched Riggs. (*Id.* ¶ 56.) The jury indicted Crane. Following Officer Juster's grand jury testimony, the Will County State's Attorney Office directed Officer Juster to interview Crane's friends who were present at the laundromat the night of the incident. (*Id.*,

Pl.'s Stmt. ¶¶ 43, 44.) Officer Juster interviewed Sean Doyle and Sylyna Ficarella, both of whom stated that Crane did not hit James Riggs, but instead Steve Krand had. (Defs' Stmt. ¶ 58, Pl.'s Stmt. ¶¶ 43, 44.) Following this additional investigation, Officer Juster created a police report documenting his interviews with Doyle and Ficarella and faxed it to the State's Attorney Office. (*Id.*)

Also after Crane's arrest, both Valerie and James Riggs expressed second thoughts about Crane's guilt. (*Id.* ¶¶ 61, 62, 63.) When Donald Riggs learned about his children's second thoughts, he contacted the State's Attorney Office to relay the information. (*Id.* ¶ 64, Pl.'s Stmt. ¶ 46.) Donald Riggs also talked to Officer Brymer at the Wilmington Police Department. (Defs' Stmt. ¶¶ 64, 65.) At his deposition, Donald Riggs testified that Officer Brymer told him he would do what he could do and that he would leave a note for the detective on the case. (*Id.* ¶ 65, Pl.'s Ex. N, D. Riggs Dep., at 46.) Officer Brymer, however, never advised Officer Juster of his conversation with Donald Riggs nor did Officer Brymer take any action regarding the information Donald Riggs had provided. (Pl.'s Stmt. ¶ 47.)

Eventually, State's Attorney John Connor contacted Officer Juster and directed him to re-interview James and Valerie Riggs and to conduct an additional line-up containing Krand's photograph. (Defs' Stmt. ¶ 66.) When Connor contacted Officer Juster, however, the grand jury had already indicted Crane and Officer Juster was no longer a detective responsible for investigating criminal matters for the police department. (*Id.* ¶ 67.) Because his official duties no longer included investigations, Officer Juster forwarded State's Attorney Connor's request to the appropriate individual in the police department and advised Connor that a new detective would handle the matter. (*Id.* ¶ 68.) Connor testified that he was satisfied with Officer Juster's

7

response to his request. (*Id.* ¶ 69.)

Crane spent sixty-six days in the Will County Jail. (Pl.'s Stmt. ¶ 50.) On April 7, 2003, the State's Attorney dismissed the charges against Crane. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Id.* at 255. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

### I. False Imprisonment

First, Crane brings a false imprisonment claim pursuant to the Fourth Amendment made applicable to the states by virtue of the Fourteenth Amendment. *See* 42 U.S.C. § 1983. Section

1983 provides a cause of action against any person who, acting under color of state law, deprives another person of a right, privilege, or immunity secured by the United States Constitution or federal laws. *See* 42 U.S.C. § 1983; *Lekas v. Briley,* 405 F.3d 602, 606 (7th Cir. 2005). The existence of probable cause to arrest, however, precludes a Section 1983 lawsuit for false imprisonment. *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003) (citations omitted). The Court thus turns to the legal basis for Crane's arrest.

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, police officers must reasonably believe, in light of the facts and circumstances within their knowledge at the time, that the suspect has committed or was committing a crime. *United States v. Parra,* 402 F.3d 752, 763-64 (7th Cir. 2005) (citations omitted); *see also Gates*, 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules").

Here, Officer Cox arrested Crane pursuant to a valid arrest warrant. Officer Juster obtained the arrest warrant based on the facts and circumstances that he knew at that time, namely, James and Valerie Riggs' identification of Crane as the assailant in separate photographic line-ups and in their written statements. Officer Juster also relied on Officer Denault's and Delaney's reports. Officer Denault's incident report named Crane as a possible suspect and the typewritten report by Officers Denault and Delaney indicated that Crane was at the laundromat the evening of the incident. Based on this evidence, the police had probable cause to arrest Crane. *See Beauchamp v. City of Noblesville,* 320 F.3d 733, 743 (7th Cir. 2003)

9

(complaint of single witness or victim alone is generally sufficient to establish probable cause). It was not until after Crane's arrest that Valerie and James Riggs expressed second thoughts about Crane's guilt and Donald Riggs contacted the Will County State's Attorney to relay this information. *See id.* (courts look "at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight").

A. **Photographic Line-up**

Nonetheless, Crane contends that the photographic arrays used to identify him as the assailant were unnecessarily suggestive, and thus these arrays undermine a finding of probable cause. Specifically, Crane asserts that Valerie Riggs gave the police a description of the assailant as clean shaven, approximately six feet tall, with dark hair, and approximately 18-25 years old, yet Crane was the only photograph of the six in the array that specifically fits this description.[1]

An identification procedure is unduly suggestive only where it creates "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). As such, an unduly suggestive lineup alone cannot be the basis for a constitutional claim against police officers because "[t]he rule against admission of evidence from unnecessarily suggestive lineups is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983." *Hensely v. Carey,* 818 F.2d 646, 649 (7th Cir. 1987). Crane, however, is not basing his claim for damages under Section 1983 on

---

[1] Crane later admits that Valerie Riggs' description of the assailant was "extremely general." (*See* R. 43-1, Pl.s' Memorandum in Response to Summary Judgment, at 7.)

10

allegations of an unduly suggestive photo array.  Instead, he contends that Defendants did not have probable cause to arrest him because of the suggestive photographic line-ups.

Based on the Court's review of the six photographs in the line-ups and the evidence in the record, the Court would be hard-pressed to conclude that the photographic line-ups were unduly suggestive. *See United States v. Carter,* 410 F.3d 942, 948 (7th Cir. 2005) (six sufficient number for line-up).  Although the photographs in the array included three unshaven men, one individual who was slightly balding, and an individual who was blond, these differences alone are not substantial enough for the photographic arrays to be considered unduly suggestive. *See, e.g.*, *United States v. Galati,* 230 F.3d 254, 259 (7th Cir. 2000) (different hair color and length not substantial difference); *United States v. Funches,* 84 F.3d 249, 253 (7th Cir. 1996) (line-up not unduly suggestive even though defendant was oldest, shortest, and weighed the least).  In fact, the individuals had characteristics in common – all of the individuals were within 3 inches of six feet tall, they appear to be approximately 18-25 years old, the individuals are all white males, and all but one were dressed similarly.  As the Seventh Circuit recognized, "[a] lineup of clones is not required."  *United States v. Arrington,* 159 F.3d 1069, 1073 (7th Cir. 1998).

Even if the photographic arrays were suggestive, Defendants had probable cause to arrest Crane based on Officer Denault's incident report stating that Crane was a possible suspect and the typewritten report indicating that Crane was at the scene of the crime. *See Malley v. Briggs,* 475 U.S. 335, 345-46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost").  Finally, there is no evidence in the record that Officer Juster affirmatively encouraged or prompted Valerie or James Riggs to choose Crane

from the photographic line-ups. Because Crane has not established a genuine issue of material fact, his arguments based on the photographic arrays fails as a matter of law.

### B. Duty to Investigate

Crane also argues that because Valerie and James Riggs' eyewitness and victim accounts were not reliable, the police had a duty to conduct further investigation before arresting Crane. "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake County Forest Pres. Dist.,* 270 F.3d 520, 522, 524 (7th Cir. 2001). In other words, if a reasonably credible victim or eyewitness gives the police sufficient information to establish probable cause, the police have no duty to conduct any further investigation at that time. *Id.* Therefore, the Court turns to whether Valerie and James Riggs' accounts were not credible.

Besides his claim that the line-ups were unduly suggestive, Crane does not explain why Valerie and James Riggs' eyewitness and victim accounts are unreliable nor does he support this claim with undisputed facts in the record. For instance, Crane surmises that Valerie Riggs' identification was a "tentative guess." He further argues that the encounter between Valerie, James, and the assailant was fast and heated, and thus they had a limited ability to accurately identify the person who hit James. Crane also argues that had Officers Denault and Delaney continued their investigation on the night of the incident, they could have found him and obtained an on-site eyewitness identification by James and Valerie Riggs that he was not the assailant. These arguments are mere conjecture and not supported by definite, competent

evidence as required at this procedural posture. *See Butts*, 387 F.3d at 924. In sum, Crane's arguments are based on speculation and misstatements of the facts in the record. Because Crane fails to establish any genuine issues of material fact, his claim that the police had a duty to further investigate fails.

**II.     Malicious Prosecution Under Illinois Law**

Next, Crane brings a state law claim of malicious prosecution. To successfully establish a claim for malicious prosecution under Illinois law, Crane must show: (1) the institution and prosecution of judicial proceedings by Defendants; (2) a lack of probable cause for those proceedings; (3) malice in instituting the proceedings; (4) termination of the judicial proceeding in his favor; and (5) that he suffered damages. *Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill.2d 267, 272, 226 Ill.Dec.604, 685 N.E.2d 1347, 1350 (1997); *Reed v. Doctor's Assocs., Inc.,* 355 Ill.App.3d 865, 873, 291 Ill.Dec. 848, 824 N.E.2d 1198 (Ill.App.Ct. 2005).

Crane's malicious prosecution claim fails for several reasons. As discussed, the police had probable cause to arrest Crane. *Johnson v. Target Stores, Inc.,* 341 Ill.App.3d 56, 73, 274 Ill.Dec. 795, 791 N.E.2d 1206, 1219 (Ill.App.Ct. 2003) ("failure to prove a lack of probable cause is fatal to a claim for malicious prosecution"). Furthermore, Crane has not presented definite, competent evidence that the defendant officers acted with malice, that is, with the intent to commit a wrongful act in instituting the judicial proceedings. *See id.* at 76. In fact, the police officer defendants had no role in instituting the judicial proceedings after the grand jury indictment because the State's Attorney, not the police, prosecute criminal actions. *See Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996) (although wrongful arrest may be first step

towards malicious prosecution, chain of causation broken by indictment). Because there are no genuine issues of material fact, the Court grants Defendants' summary judgment motion on Crane's malicious prosecution claim as a matter of law.

## III. Respondeat Superior

Crane brings his last claim based on respondeat superior. Under the Illinois Local Government and Governmental Employees Tort Immunity Act, a local public entity is not liable for an "injury resulting from an act or omission of its employee where the employee is not liable." *Cross v. City of Chicago,* 352 Ill.App.3d 1, 6, 287 Ill.Dec. 312, 815 N.E.2d 956, 965 (Ill.App.Ct. 2004) (citing 745 ILCS 10/2-109). Accordingly, the City of Wilmington and the Wilmington Police Department cannot be held liable under the theory of respondeat superior because the defendant police officers were not liable in the first instance.

Finally, a municipality cannot be held liable solely on the basis of respondeat superior in Section 1983 actions. *Calhoun v. Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005). Therefore, Crane's last claim fails.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment. The Court denies Defendants' motion to strike Plaintiff's references to his expert as moot.

Dated: October 4, 2005

                **ENTERED**

                _____
                **AMY J. ST. EVE**
                **United States District Court Judge**